Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL X

| | | |
|---|---|---|
| KRUPP & CO., INC.<br><br>Peticionario<br><br>V.<br><br>JOSÉ M. TORAL MUÑOZ, CARMEN SILVA PEREYÓ Y LA SOCIEDAD DE GANANCIALES COMPUESTA POR AMBOS<br><br>Recurridos | KLCE202401057 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Guaynabo<br><br>Caso Núm.: GB2023CV00656<br><br>Sobre: Restitución de Pago de lo Indebido y Daños y Perjuicios |

Panel integrado por su presidenta; la Juez Lebrón Nieves, la Juez Romero García y el Juez Rivera Torres

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 4 de octubre de 2024.

El 30 de septiembre de 2024, compareció ante este Tribunal de Apelaciones, Krupp & Co., Inc. (en adelante, Krupp o parte peticionaria) mediante *Certiorari.* Por medio de este, nos solicita que, revisemos la *Orden* emitida y notificada el 28 de agosto de 2024, por el Tribunal de Primera Instancia, Sala Superior de Guaynabo. En virtud del aludido dictamen, el foro *a quo* dio por concluido el periodo de deposiciones de la parte peticionaria.

Por los fundamentos que expondremos a continuación, se deniega la expedición del recurso de *Certiorari* al no satisfacer los criterios establecidos en la Regla 52.1 de Procedimiento Civil.

### I

Previo a esbozar el tracto fáctico que dio paso a la controversia de epígrafe, hacemos constar que, este se extrae de la *Resolución* del caso KLCE202400819, emitida el 13 de septiembre de 2024, por este mismo Panel.

Número Identificador

RES2024 _____

Según surge del expediente, Krupp es una corporación creada por el señor Rigoberto Figueroa Figueroa (en adelante, señor Figueroa Figueroa), quien fungía como su único y principal accionista. El 7 de diciembre de 2019, el señor Figueroa Figueroa falleció, habiendo otorgado testamento, mediante el cual, nombró como albacea al señor Rigoberto Cintrón Perales (en adelante, señor Cintrón Perales). A los fines de cumplir con sus responsabilidades, el señor Cintrón Perales tomó posesión de la oficina de Krupp. Posteriormente, el 20 de enero de 2020, mediante resolución corporativa, este fue nombrado como presidente de la Junta de Directores de Krupp, así como también, principal director ejecutivo de la corporación. Simultáneamente, el señor José Toral Muñoz (en adelante, señor Toral Muñoz), fue nombrado como tesorero de la Junta de Directores de Krupp, y como principal ejecutivo de inversiones.

Ante este escenario, el 1 de agosto de 2023, Krupp presentó una *Demanda* sobre restitución de pago de lo indebido y daños y perjuicios, contra el señor Toral Muñoz, su esposa, la señora Carmen Silvia Pereyó, y la Sociedad Legal de Gananciales compuesta por ambos (en adelante y en conjunto, la parte recurrida). En síntesis, la parte peticionaria alegó que, para finales del mes de enero, o principios del mes de febrero de 2020, el señor Toral Muñoz le informó al señor Cintrón Perales, y a otro de los directores de la Junta de Directores de Krupp que, el señor Figueroa Figueroa no le había pagado unas facturas presentadas por servicios prestados. Alegó que, el señor Toral Muñoz presentó una factura con fecha del 16 de enero de 2014, por la cantidad de $19,466.25.

Sostuvo que, tras examinar la misma, ambos directores procedieron a emitir un cheque a favor del señor Toral Muñoz, desde la cuenta bancaria de Krupp, por la cantidad de veinte mil dólares

($20,000.00). Indicó que, el señor Toral Muñoz endosó el mismo, y lo depositó en su cuenta bancaria.

Posteriormente, el 7 de febrero de 2020, el señor Toral Muñoz presentó una segunda factura ante los directores de Krupp, por otros servicios presentados al señor Figueroa Figueroa, por la cantidad de $19,205.00. El señor Toral Muñoz alegó que, la misma tampoco le había sido pagada. Ante ello, la factura le fue pagada en plazos.

Conforme surge de la *Demanda*, varios años después, el 2 de mayo de 2023, el señor Cintrón Perales encontró un expediente en la oficina de Krupp, con el nombre del señor Toral Muñoz. En su interior, el expediente contenía unas facturas firmadas en original por este último. Al examinarlas, el señor Cintrón Perales pudo notar que, las mismas eran similares a las facturas pagadas en el mes de febrero de 2020. Sostuvo que, en esencia, la única distinción entre estas se circunscribía a varias palabras que constaban escritas en las facturas encontradas, a saber, "Paid, Cortesía", y/o "N/C".

El 16 de junio de 2023, Krupp notificó al señor Toral Muñoz el hallazgo de las facturas, y le indicó que debía renunciar inmediatamente, proveyéndole un periodo de cinco (5) días para ello.

El 19 de junio de 2023, el señor Toral Muñoz, a través de su representante legal, respondió a Krupp, indicando que, el señor Figueroa Figueroa le había expresado que le pagaría las facturas más adelante, lo cual no ocurrió. El 22 de junio de 2023, la peticionaria respondió a la comunicación reiterándose en su postura.

Por todo lo anterior, Krupp reclamó, entre otros, la restitución del dinero pagado, más una compensación por los daños y perjuicios y económicos causados.

Luego de varias incidencias procesales, innecesarias pormenorizar, el 24 de junio de 2024, fue celebrada una *Vista Sobre*

*el Estado de los Procedimientos*. Según surge de la *Minuta,* en corte abierta, el foro primario expresó que, la parte peticionaria le tomaría las deposiciones a la parte recurrida el 9 de agosto de 2024, y la parte recurrida a la parte peticionaria el 16 de agosto de 2024. Además, dispuso que, el descubrimiento de prueba se daría por terminado el 30 de septiembre de 2024.

Así las cosas, el 9 de agosto de 2024, la parte recurrida presentó *Solicitud de Orden con Respecto a Deposición Pautada para el 16 de agosto y de Sanciones[1]*.

El 27 de agosto de 2024, la parte peticionaria presentó *Moci[ó]n Informativa.* Por medio de esta, adujo que, en la tarde del 26 de agosto de 2024, la representación legal de la parte peticionaria le había notificado por carta que no tomaría las deposiciones a la parte recurrida según pautado, y que tampoco habría de tomarse la del señor Cintrón Perales el 16 de agosto. Justificó lo anterior basado en que había presentado un *Certiorari* ante este tribunal, y solicitó que se le proveyeran otras fechas para recalendarizar dichas deposiciones. Ante esto, la parte recurrida sostuvo que, la razón provista por la parte peticionaria era una temeraria. A estos efectos, solicitó al foro *a quo* que ordenara la comparecencia del señor Cintrón Perales a la toma de deposición el 16 de agosto de 2024 y le impusiera sanciones a la parte peticionaria.

Por otro lado, la parte peticionaria presentó la *R[é]plica a Solicitud de Orden con Respecto a Deposición Pautada para el 16 de agosto y de Sanciones[2]*. Adujo que, mediante llamada telefónica a la oficina de la representación legal de la parte recurrida, sugirió recalendarizar la fecha de las deposiciones. Sin embargo, no recibió respuesta alguna por parte de la representación legal de la parte

---

[1] Cabe señalar que esta moción no fue incluida como parte del Apéndice del recurso. Fue extraída de SUMAC entrada núm. 47.
[2] Cabe señalar que esta moción no fue incluida como parte del Apéndice del recurso. Fue extraída de SUMAC entrada núm. 48.

recurrida. Le solicitó al foro de primera instancia que no impusiera sanciones y que le ordenara a la parte recurrida a informar si podían tomarse las deposiciones en otras fechas.

El 9 de agosto de 2024, el Tribunal de Primera Instancia emitió una *Orden*[3], por medio de la cual dispuso lo siguiente:

> Las deposiciones previstas para hoy, 9 de agosto de 2024, se recalendarizan para el 16 de agosto de 2024. En torno a las deposiciones calendarizadas para el 16 de agosto de 2024, debe la parte demandada seleccionar entre las tres fechas provistas por la parte demandante.

El 15 de agosto de 2024, la parte peticionaria presentó la *Moci[ó]n Solicitando Dejar sin Efecto Deposiciones para el 16 de agosto de 2024 por Justa Causa y Solicitud de Orden*[4]. Posteriormente, la parte peticionaria presentó *Moci[ó]n Informando Fechas Acordadas para Deposiciones*[5], donde notificó que las partes acordaron la toma de deposiciones para las fechas 27 y 28 de agosto de 2024.

La parte peticionaria presentó el 27 de agosto de 2024 la *Moci[ó]n Informativa*, donde nuevamente solicitó recalendarización de la toma de deposiciones. En igual fecha, la parte recurrida presentó *Moción Solicitando se Ordene Tomar Deposición*.

Finalmente, la primera instancia judicial emitió la *Orden* cuya revisión nos ocupa. En virtud de esta determinó lo siguiente:

> Habida cuenta que la parte demandante ha suspendido las deposiciones de los codemandados en cinco ocasiones, por motivos atribuibles mayoritariamente a su propio proceder, y en aras de una sana administración de la justicia, damos por concluido el periodo de deposiciones de la parte demandante. La calendarización de estas de posiciones desde noviembre del 2023, en cinco ocasiones, evidencian esfuerzos en exceso razonables en garantía del debido proceso de ley de la parte demandante. Sin embargo, no resulta razonable extender la ordalía de unas deposiciones a las

---

[3] Cabe señalar que esta *Orden* no fue incluida como parte del Apéndice del recurso. Fue extraída de SUMAC entrada núm. 52.
[4] Cabe señalar que esta moción no fue incluida como parte del Apéndice del recurso. Fue extraída de SUMAC entrada núm. 54.
[5] Cabe señalar que esta moción no fue incluida como parte del Apéndice del recurso. Fue extraída de SUMAC entrada núm. 55.

cuales la propia parte demandante opta por poner obstáculos.

Inconforme, la parte peticionaria presentó *Reconsideración*, que fue declarada No Ha Lugar mediante *Orden* emitida y notificada el 30 de agosto de 2024.

Aun insatisfecha, la parte peticionaria acudió ante este foro revisor y esgrimió los siguientes señalamientos de error:

- Erró el Honorable Tribunal de Primera Instancia, Sala Superior de Guaynabo en su Resolución del 28 de agosto de 2024, incurriendo en abuso de discreción y error manifiesto, al sancionar exclusivamente a los demandantes por haber alegadamente cancelado las deposiciones de los demandados pautadas para el 27 de [a]gosto de 2024, a pesar de que no hab[í]a concluido el descubrimiento de prueba para tomarle deposiciones a los demandados y de que la cancelación de las deposiciones fue provocada por la parte demandadad [sic.] actuando de ese modo con pasión, perjuicio parcialidad y error manifiesto, contraria al derecho constitucional a un debido procedimiento de ley, lo que resulta en un fracaso de la justicia.

- Erró el Honorable Tribunal de Apelaciones [sic.], al declarar No Ha Lugar la Moción de Reconsideración de la parte demandante del 28 de agosto de 2024 y no tomar en consideración la moci[ó]n informativa presentada por los demandantes el 27 de agosto de 2021 en cuanto a la cancelación de las deposiciones por los demandados, por lo que sus determinaciones están en conflicto con el balance más racional, justiciero y jurídico de la controversia, incurriendo en craso abuso de discreción, actuando de ese modo con pasión, prejuicio, parcialidad y error manifiesto.

Por no entender necesaria la comparecencia de la parte recurrida, prescindimos de esta[6].

**II**

### A. *El Certiorari*

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.,*

---

[6] En virtud de la Regla 7 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B R.7, este tribunal tiene la facultad para prescindir de términos no jurisdiccionales, escritos, notificaciones o procedimientos específicos en cualquier caso ante su consideración, con el propósito de disponer el recurso de manera eficiente.

212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[7]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es

---

[7] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis Nuestro).
> [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias

en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial*". Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

## B. Manejo de Sala

Como es sabido, nuestra más Alta Curia ha reconocido que, los foros de instancia gozan de amplia discreción en la tramitación de los casos ante su consideración, de manera que, se pueda asegurar la más eficiente administración de la justicia. *Vives Vázquez v. ELA*, 142 DPR 117 (1996); *Molina v. Supermercado Amigo, Inc.*, 119 DPR 330 (1987). Conforme a ello, con el propósito de mantener un funcionamiento efectivo de nuestro sistema judicial, y de que se dispongan los asuntos litigiosos de forma rápida, es necesario que los juzgadores de instancia ostenten "gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales". *In re Collazo I,* 159 DPR 141 (2003). Ello implica que, estos deberán gozar de poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para

aplicar aquellos correctivos apropiados, de acuerdo a su buen juicio[8]. En virtud de estos poderes, los foros de instancias tienen disponibles múltiples mecanismos procesales para asegurar y mantener el orden de los procedimientos que atienden, para hacer cumplir sus órdenes y para realizar cualquier acto necesario para cumplir a cabalidad sus funciones. *Íd.*; *ELA v. Asoc. de Auditores*, 47 DPR 669 (1999).

Nuestra última instancia judicial ha señalado que, "[e]specíficamente, la discreción ha de ceder en las circunstancias en las que se configura: un craso abuso de discreción o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación." *BPPR v. SLG Gómez-López,* 2023 TSPR 145, 213 DPR ____ (2023).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Empero, no [hay] duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho". (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

---

[8] *Íd.* pág. 150.

Si la actuación del tribunal de instancia no se encuentra desprovista de base razonable, ni perjudica los derechos sustanciales de una parte, prevalecerá el criterio del juzgador de hechos a quien le corresponde la administración del proceso para disponer de los procedimientos ante su consideración. *Sierra v. Tribunal Superior*, 81 DPR 554 (1959).

**III**

Como tribunal apelativo, en primer lugar, nos encontramos obligados a examinar si ostentamos jurisdicción para atender el recurso presentado ante nos. Por ello, en el caso de autos, nos corresponde determinar en primera instancia, si el promovente del recurso ha planteado un asunto comprendido en alguna de las excepciones de la Regla 52.1, supra. Veamos.

Como mencionáramos, la parte peticionaria nos solicita la revisión de una *Orden* donde el Tribunal de Primera Instancia declaró No Ha Lugar una solicitud de recalendarizar la toma de una deposición y consecuentemente, dio por concluido el término de toma de posiciones de la parte peticionaria. Es decir, la controversia versa sobre un asunto de descubrimiento de prueba.

A la luz de la norma jurídica antes reseñada, nos es forzoso concluir que, tal dictamen interlocutorio no se encuentra comprendido dentro de nuestro estado de derecho procesal. Por lo que, en virtud de lo dispuesto por la Regla 52.1 de Procedimiento Civil, *supra*, estamos impedidos de revisar el dictamen emitido por el foro *a quo*.

Tras evaluar detenidamente el recurso presentado por la parte peticionaria, colegimos que, no procede la expedición del auto solicitado. Los señalamientos de error antes reseñados, por los fundamentos aducidos en la petición, no pueden activar nuestra jurisdicción discrecional en el caso de autos. La decisión recurrida

no es manifiestamente errónea y encuentra cómodo asilo en la sana discreción del Tribunal de Primera Instancia.

Por otro lado, la parte peticionaria tampoco ha logrado persuadirnos de que nuestra abstención apelativa en este momento y sobre el asunto planteado constituiría un rotundo fracaso de la justicia[9].

**IV**

Por los fundamentos antes expuestos, se deniega el recurso de *certiorari* al no satisfacer los criterios establecidos en la Regla 52.1 de Procedimiento Civil.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[9] Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*